### Edmund A. Wetmore v. Henry Aldrich and another.

A contract by which parties undertake to pay for the care and board of a lunatic so long as he shall continue in the Asylum, and to remove him therefrom whenever his room shall be required for preferred patients, is not terminated by a notice that the parties will no longer be responsible for his care and board. To relieve themselves from liability they must remove him from the Asylum.

*Submitted October 10th. Decided October 28th.*

Edmund A. Wetmore, Treasurer of the New York State Lunatic Asylum, brought assumpsit in the Circuit

Court for the county of Cass, against Henry Aldrich and Ezra B. Warner, upon the following contract, upon which he claimed to recover for the board of George F. Gardner at said asylum, from February 1st, 1860, to February 21st, 1861, at five dollars per week; for clothing furnished him between said days to the amount of $16.21, and for the expense of removing him to Cass county, amounting to $80 and interest:

"Whereas, George F. Gardner, of the town of Kendall, in the county of Orleans, N. Y., an insane person, has been admitted as a patient in the New York State Lunatic Asylum, at Utica. Now, therefore, we, the undersigned, in consideration thereof, bind ourselves to Edmund A. Wetmore, Treasurer of said Asylum, to pay to him, and his successors in office, the sum of five dollars     cents per week, for the care and board of said insane person, as long as he shall continue in said asylum, with such extra charges as may be occasioned by his requiring more than ordinary care and attention, and also to provide him with suitable clothing, and to pay for all such necessary articles of clothing as shall be procured for him by the steward of the asylum. And to remove him from the asylum whenever the room occupied by him shall be required for a class of patients having preference by law. And if he shall be removed at the request of his friends, before the expiration of six calendar months after reception, then we engage to pay board for twenty-six weeks, unless he shall be sooner cured, and also to pay, not exceeding fifty dollars, for all damages he may do to the furniture or other property of said asylum, and for reasonable charges in case of elopement, and funeral charges in case of death. Such payments for board and clothing to be made semi-annually, on the first days of February and August, in each year, and at the time of removal, with interest on each bill from and after the time it becomes due.

In witness whereof, we have hereunto set our names this 14th day of September, in the year 1857.

HENRY ALDRICH,
*Guardian for George F. Gardner.*
E. B. WARNER."

It was proved on the trial that said lunatic was taken from Cass county to said Orleans county by his brother, Charles A. Gardner, and from thence was taken by another brother, Silas Gardner, and conveyed to said asylum at Utica, and then left with the above contract in the latter part of September, 1857. That the steward returned said lunatic to his guardian, the defendant Aldrich, in Cass county, in the latter part of February or the first part of March, 1861.

It was further proved, that H. N. Dryer was the steward, and John P. Gray the superintendent of said asylum, from the time said lunatic entered said asylum until his removal, and that the plaintiff was the treasurer thereof at the date of said contract, and of the commencement of this suit.

It was further proved, that the board of said lunatic from February 1st, 1860, to February 21st, 1861, was unpaid, and that the steward had furnished him with necessary clothing of the value of $16.21.

No proof of the expense of removal was made.

It was further proved, that said superintendent, by letters dated January 16th, 1860, notified defendants that " Mr. Gardner must be removed from the asylum." And that he, in his letter to defendant Aldrich, informed him that " the institution in all cases, where persons are committed to its care, must look to the bondsmen and sureties for the payment of the expenses."

That in said letters he claimed that there would be due said asylum, on the first day of February, 1860, $345.83. This bill was paid by Gardner's brothers.

It was further proved, that said defendant Aldrich,

by letter dated January 25th, 1860, notified said John P. Gray as follows: "You say Mr. Gardner must be removed: now, as Mr. Gardner was put under your control by the Mr. Gardners of your State, I hope you will call on them to take care of him. I informed you in my former letter that I had no means to pay the demands you make, belonging to the Gardner estate. If you had sent your bill at the end of six months from the time I paid the last bill, there would have been no necessity for this; but instead of that you have let it run over seventeen months without saying a word, not even informing me how Mr. Gardner was when I wrote you, and saying to you, I did'nt wish to have him remain there unless there was a prospect of his being helped, &c. Now, to save trouble, as the thing has gone so far, I make you this proposition: I will pay you one hundred and fifty dollars, even if it does come out of my own pocket, if you release me from all further trouble in the matter. I suppose you wont think of holding me any further than the estate of George Gardner will carry me."

It was further proved, that in January or February, 1860, defendant Aldrich wrote to said superintendent, that the defendants would not be held any further for the maintenance of George F. Gardner, and requested him to remove him to his brothers, and that he had no more means in his hands belonging to George F. Gardner.

The Court charged the jury, that by the terms of the contract read in evidence, either party thereto might put an end to his liability under it, by giving to the other reasonable notice thereof; that the notices given in evidence by the defendants were, if they were received, in the opinion of the Court such reasonable notice, and the defendants ceased to be liable, in a reasonable time thereafter, to the asylum for the care and board of the lunatic, and that if the jury believed the defendant gave to the superintendent of the asylum such reasonable notice, then the

plaintiff could not recover for any expense in the care and board of said lunatic accruing thereafter from the defendants.

This charge was excepted to, and verdict having been rendered for defendants, the case came up for review upon the exception.

*E. T. Throop* for plaintiff:

The defendants could not terminate their liability by notice. To imply an agreement to this effect would be an implication against the *express terms* of the contract—which the law will not permit:—1 *Doug. Mich.* 337; 7 *Mass.* 107; 2 *Tenn.* 104; 6 *Tenn.* 320; *Chit. on Con.* 25. Without such an agreement notice could not affect the rights of the parties. The defendants were responsible till they took Gardner away:—3 *Met.* 1; 15 *Mo.* 592; 30 *Penn. St.* 524. Receiving money from Gardner's brothers is no evidence of an agreement to discharge defendants, or to look to any one else for payment in the future:— 3 *Met.* 5. And the brothers, having given no written undertaking, had not made themselves liable for the future.

*C. W. Clisbe* for defendants:

The defendants might determine their liability by giving notice.

By the contract the Asylum was not bound to keep the patient a single day. The officers of the Asylum might have removed him from their premises, and were not bound to return him to his friends. Had they turned him at large no action could be maintained against them for a breach of the contract. The Asylum took especial pains that it should be bound to nothing. The expenditures on its part, for board care and clothing, were voluntary. Its duties continued only at its own pleasure.

The contract binds defendants in general terms to pay for the care, board, &c., of said insane person, as long as

he shall continue in said Asylum. Out of caution lest some implied obligation might be incurred, the contract goes on to limit the liabilities of the Asylum, and places further obligations upon the defendants by requiring the patient · to be removed if his room shall be needed for preferred patients, by providing that payment should be made for six months, whether the patient be kept or not, and making them liable for damages to furniture, and expenses occasioned by elopement or by the death of the patient.

The parties seem to have considered every possible contingency, and provided therefor. We therefore think the written contract excludes every implication, and that the maxim "expression of one or more things, is the exclusion of all not expressed" should apply in this case with full effect:—2 *Pars. on Cont.* 28.

The plaintiff places much stress upon the words, "as long as he shall continue in said Asylum," contained in the contract. The patient might cease to be an inmate of the Asylum in various ways. He might die, elope, be sent away by the Asylum, or taken away by his friends. That expression is adapted alike to either event. It must mean, "so long as he shall be continued in the Asylum;" which would necessarily imply, by the consent of the parties to the contract.

Again: The defendants were guarantors, and the promise of a guarantor is always revocable unless it be for a consideration and contain terms rendering it irrevocable:—1 *Pars. on Cont.* 514–517.

MANNING J.:-

The Court erred in charging the jury that by the terms of the contract either party might put an end to it by giving notice to the other. By the contract defendants bound themselves to pay five dollars per week for the care and board of the lunatic as long as he should continue

in the Asylum, and to remove him therefrom whenever the room occupied by him should be required for a class of patients having preference by law. To put an end to the contract they should have removed the lunatic from the Asylum, or offered to remove him. No notice short of a removal or offer to remove him would terminate their liability for his care and board.

The judgment is reversed, with costs, and a new trial ordered.

The other Justices concurred.